Filed 11/5/13  Jensen v. Charon Solutions CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PEACHES NONG JENSEN et al, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CHARON SOLUTIONS, INC., et al., <br><br> Defendants and Respondents. | B240651 (c/w B244155) <br><br> (Los Angeles County <br> Super. Ct. No. BC469884) <br><br><br> **ORDER MODIFYING OPINION AND DENYING REHEARING** <br><br> **[CHANGE IN JUDGMENT]** |
| CHARON SOLUTIONS, INC., et al, <br><br> Cross-complainants and Appellants, <br><br> v. <br><br> PEACHES NONG JENSEN et al., <br><br> Cross-defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on October 10, 2013, be modified as follows:

On page three, fourth line, the following sentence should be deleted:  "The trial court also properly declined to award attorney fees for an attorney who was 'of counsel' to the firm he represented."

On page nine, at the end of the fifth line, the following sentence should be added after the word "appealed.": "They later dismissed their appeal in November 2012."

On page ten, the paragraph under **DISCUSSION** is modified to read as follows: "We address the three challenged rulings: The trial court's granting the Attorneys' motion to strike, granting in part Charon's and Segal's motion to strike, and granting Peachtree's and Jensen's motion to strike."

Part **III**, pages 27 through 30, should be deleted in its entirely, and all subsequent footnotes should be renumbered to account for the deletion of footnote 11.

On page 31, part **IV** should now read: "**III**."

The **DISPOSITION** on page 39 is modified to read as follows: "The orders granting the Attorneys' motion to strike, granting in part Charon's and Segal's motion to strike, and granting Peachtree's and Jensen's motion to strike are affirmed. All parties to bear their own costs on appeal.

This modification changes the judgment.

The petition for rehearing is denied.

| | | |
|---|---|---|
| BOREN, P. J. | CHAVEZ, J. | FERNS, J.* |

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PEACHES NONG JENSEN et al, Plaintiffs and Appellants, v. CHARON SOLUTIONS, INC., et al., Defendants and Respondents. | B240651 (c/w B244155) (Los Angeles County Super. Ct. No. BC469884) |
| CHARON SOLUTIONS, INC., et al, Cross-complainants and Appellants, v. PEACHES NONG JENSEN et al., Cross-defendants and Respondents. | |

APPEALS from orders of the Superior Court of Los Angeles County.  Kevin C. Brazile, Judge.  Affirmed.

Law Offices of Yvonne M. Renfrew and Yvonne M. Renfrew for Plaintiffs and Appellants, Cross-defendants and Respondents Peaches Nong Jensen and Peachtree Financial Corporation.

Henry J. Josefsberg for Defendants and Respondents, Cross-complainants and Appellants Charon Solutions, Inc. and Perry L. Segal.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Michael W. Feenberg for Defendants and Respondents Marcin Lambirth, LLP, John B. Marcin, Timothy Lambirth, Regina Ashkinadze, and Graham A. Bentley; Nemecek & Cole and David B. Owen for Defendants and Respondents Justin Shrenger and the Law Offices of Justin J. Shrenger.

Law Offices of Mark Murad and Mark Murad for Cross-complainants and Appellants Marcin Lambirth, LLP, John B. Marcin, Timothy Lambirth, Regina Ashkinadze, Graham Bentley and Defendant and Respondent Lisa Miller.

\* \* \* \* \* \*

Following a failed real estate transaction, Charon Solutions Inc. (Charon), owned by Perry Leonard Segal (Segal), sued Peachtree Financial Corporation (Peachtree) and its owner Peaches Nong Jensen (Jensen), who in turn cross-complained. After neither side prevailed, they sued each other for malicious prosecution. Peachtree and Jensen also sued a number of attorneys, including the Law Offices of Justin J, Schrenger, Justin J. Schrenger, Marcin Lambirth LLP, John B. Marcin, Timothy Lambirth, Regina Ashkinadze, Graham Bentley and Lisa Miller (sometimes collectively Attorneys). In turn, the Attorneys and Charon and Segal on the one hand, and Peachtree and Jensen on the other, filed special motions to strike the malicious prosecution complaints pursuant to Code of Civil Procedure section 425.16.[1] With the exception of two causes of action initially alleged by Charon, the trial court granted the motions to strike and granted in part the Attorneys' motions for attorney fee awards.

We affirm. The trial court properly granted the Attorneys' and Charon's and Segal's motions to strike. Peachtree and Jensen failed to meet their burden to demonstrate a probability of prevailing on essential elements of their malicious

---

[1]	Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

prosecution cause of action. Peachtree failed to establish it received a favorable termination, Jensen failed to establish that Charon and Segal lacked probable cause to bring and maintain the underlying action, and both parties failed to show that Charon's first attorney acted with malice. The trial court also properly declined to award attorney fees for an attorney who was "of counsel" to the firm he represented. Finally, the trial court properly granted Peachtree's and Jensen's motion to strike, as Charon and Segal failed to meet their burden to show Peachtree lacked probable cause to bring and maintain its cross-complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Parties and the Proposed Real Estate Venture.*

Segal was the 100 percent owner of Charon, while Jensen was the 100 percent owner of Peachtree. In September 1999, Jensen purchased real property located at 22393 Cass Avenue in Woodland Hills (Cass property) from Scott Silver. As early as 1999, she expressed to Segal an interest in splitting the Cass property.

In January 2000, Charon and Peachtree entered into an operating agreement for the management of P&P Holdings, LLC (P&P Operating Agreement). They were the only members of P&P Holdings (P&P) and each held a 50 percent interest. Neither Segal nor Jensen were parties to the P&P Operating Agreement or held an interest in P&P. The stated purpose of P&P was to invest in real property. Segal and Jensen verbally agreed their intent was to seek a lot split of the Cass property for the purpose of transferring ownership of a portion of the lot to P&P, having P&P develop the new lot with a luxury residence and selling the residence for the benefit of P&P. Jensen applied for a lot split in June 2002, and in 2003, the City of Los Angeles tentatively approved the lot split, issuing a March 2004 decision date.

In March 2004, Jensen discovered defects in the Cass property that Silver had not disclosed. After she informed Segal of the defects, he asked her not to initiate an action against Silver, as it might jeopardize the lot split. Nonetheless, initially unbeknownst to Segal, Jensen filed suit against Silver (Silver action), and Silver cross-complained and

3

recorded a lis pendens against the Cass property. Silver's claims were bifurcated and tried in December 2005.

Also in December 2005, pending final argument in the Silver action, Charon gave written notice of its withdrawal from P&P (withdrawal letter). Charon, through Segal, wrote it had learned Jensen intentionally failed to disclose material information and gave false testimony in the Silver action. It accused Jensen of failing to contribute to and obstructing P&P's venture, taking out a $200,000 line of credit on the Cass property resulting in a lien being placed on it and secretly undertaking the Silver action contrary to Segal's advice. It asked for a meeting with Jensen and counsel and sought the disclosure of specified documents, advising that it would seek to intervene in the Silver action if it did not receive suitable responses to its requests. As a result of Jensen's conduct, as well as her failure to acknowledge P&P's existence during her trial testimony, Charon gave notification of its withdrawal, returned a number of P&P related items and demanded reimbursement of its P&P investment. The letter added: "Further, you are advised that I will be seeking damages in the amount of $300,000 for lost profits and estimated punitive damages in the amount of $1,200,000 (that figure may rise as my investigation uncovers more information). Further, I reserve the right to refer the case to the Department of Real Estate, but will refrain from doing so at this time to give you an opportunity to cure."

Consistent with the withdrawal letter, Charon, represented by Segal, moved to intervene in the Silver action. The trial court denied the motion, noting that Segal could not appear in propria persona on behalf of a corporation. Thereafter, the trial court issued a statement of decision in the Silver action, ruling in favor of Jensen on Silver's rescission claims.

In March 2006, Segal signed a notice of resignation, completing Charon's 90-day notice of withdrawal period from P&P.

***The Underlying Fraud Action.***

In December 2008, Charon, represented by the Law Offices of Justin J. Shrenger and attorney Justin Schrenger (sometimes collectively Schrenger), filed a complaint against Peachtree, Jensen and her husband Carl Jensen (Carl) alleging causes of action for

4

fraud, breach of fiduciary duty, conversion, unjust enrichment and declaratory relief (underlying fraud action). Peachtree, Jensen and Carl demurred to the complaint. The trial court sustained the demurrer with leave to amend as to Peachtree and Carl, overruled the demurrer as to Jensen on the first through fourth causes of action, and sustained the demurrer without leave to amend as to Jensen on the fifth and sixth causes of action.

Peachtree and Jensen also filed a cross-complaint alleging breach of fiduciary duty, negligence and fraud. After the trial court sustained a demurrer without leave to amend the breach of fiduciary duty cause of action against Segal and with leave to amend all other claims, Peachtree and Jensen filed a first amended cross-complaint alleging claims for breach of contract, negligence and declaratory relief against Charon and Segal, breach of fiduciary duty against Charon and fraud against Segal. Thereafter, the trial court sustained a demurrer without leave to amend as to all causes of action except breach of contract against Charon and entered a partial judgment of dismissal as to Segal.

In April 2009, now represented by Marcin Lambirth LLP and attorney Timothy Lambirth, Charon filed a first amended complaint against Carl and Jensen only, alleging causes of action for fraud, breach of fiduciary duty and conversion. Given that Peachtree had not been named in the first amended complaint, the trial court entered a partial judgment of dismissal in favor of Peachtree. Marcin Lambirth associates including Regina Ashkinadze and Graham Bentley worked on the matter.[2] As "of counsel" to Marcin Lambirth, attorney Lisa Miller assisted in preparing the matter for trial and acted as second chair at trial.

Jensen and Carl moved for summary judgment and alternatively for summary adjudication. In a May 2010 order, the trial court denied their motion for summary judgment, but granted summary adjudication in favor of Carl. Also in May 2010, Charon dismissed Carl from the underlying fraud action with prejudice. The trial court denied a subsequent motion for summary judgment, brought on the basis that the statute of

---

[2] On occasion we refer to this group of attorneys as the Marcin Lambirth attorneys.

limitations barred Charon's claims. It likewise denied Charon's motion for summary judgment on the cross-complaint.

In September 2010, trial commenced on the complaint's and cross-complaint's remaining claims in the underlying fraud action. At the conclusion of Charon's case, the trial court denied Jensen's motion for nonsuit. The jury rendered a special verdict in favor of Jensen on Charon's complaint and in favor of Charon on Jensen's cross-complaint.

### *Peachtree's and Jensen's Malicious Prosecution Complaint and Special Motions to Strike.*

In September 2011, Peachtree and Jensen filed a complaint for malicious prosecution against Charon and Segal, and also against the Attorneys. They alleged the underlying fraud action had been instituted without probable cause and with malice.

#### **Attorneys' special motion to strike.**

The Attorneys filed special motions to strike the malicious prosecution complaint. In support of their motions, they offered their own declarations and trial transcript excerpts, and sought judicial notice of pleadings, motions and orders in the underlying fraud action. Peachtree and Jensen opposed the motions. The trial court denied their ex parte application to file an oversized opposition brief. In support of their opposition, they filed a "master list" to which they attached a number of documents, including pleadings, orders, transcripts, deposition excerpts, correspondence and e-mails. Jensen also submitted an over 100-page declaration and Carl an over 50-page declaration. They also filed evidentiary objections. Together with their replies, the Attorneys objected to the length of Jensen's opposition papers and filed evidentiary objections.

The trial court heard the Attorneys' motions on January 18, 2012 and thereafter entered orders that fully incorporated by reference its tentative ruling to grant the motions. Preliminarily addressing procedural matters, the trial court acknowledged that Peachtree and Jensen filed opposition papers that exceeded the page limits set by the court. Though it identified Peachtree's and Jensen's failure to comply with the California Rules of Court as an alternative basis for granting the motions, it further indicated that

because of the nature of the matter and the ultimate disposition it would consider all opposition papers. With respect to evidentiary rulings, the trial court's order provided that its "ruling is set forth on page 8 of the Court's Final Ruling attached hereto." Although the referenced page 8 is omitted from Peachtree's and Jensen's appendix on appeal, their counsel acknowledged during the hearing "that Your Honor has ruled on all evidentiary objections." As part of its order, the trial court sustained all but one of the Attorneys' objections and overruled all of Peachtree's and Jensen's objections.

Addressing the merits of the motions, the trial court ruled the Attorneys met their burden to show the cause of action for malicious prosecution arose from protected activity. It further found that Peachtree could not meet its burden to show a probability of success on the merits, as it filed its claim more than one year after it was dismissed from the underlying fraud action, and therefore its cause of action was barred by the one-year limitations period contained in section 340.6. As to Jensen, it ruled she could not demonstrate a probability of success on the merits as the evidence showed neither a lack of probable cause nor malice on the part of the Attorneys. More specifically, the denial of her motion for nonsuit established that the causes of action at trial were objectively tenable. With respect to the causes of action for conversion, unjust enrichment and declaratory relief that were disposed of before trial, Jensen failed to submit admissible evidence establishing the Attorneys acted with malice.

### Charon's and Segal's special motion to strike.

Charon and Segal likewise filed a special motion to strike, together with a demurrer. They sought judicial notice of pleadings, motions, orders and transcripts in the underlying fraud action. Peachtree and Jensen opposed the motion, arguing that Charon's and Segal's conduct was illegal as a matter of law and therefore not protected, and that they established a probability of prevailing on all elements of their malicious prosecution cause of action. Jensen and Carl submitted lengthy declarations virtually identical to those submitted in opposition to the Attorneys' motions. Peachtree and Jensen also filed evidentiary objections. In turn, Charon and Segal replied and filed evidentiary objections to the declarations.

7

On March 28, 2012, the trial court heard Charon's and Segal's motion to strike. It granted the motion as to Peachtree and denied the motion in part as to Jensen. It ruled Charon and Segal met their initial burden to show that the conduct alleged arose from protected activity. With respect to the second prong, the trial court concluded that Peachtree could not establish a probability of prevailing because it failed to establish that its dismissal from the action was a favorable termination. On the other hand, it ruled Jensen had met her burden to show a probability of prevailing with respect to the causes of action for unjust enrichment and declaratory relief that were eliminated from the action via a demurrer sustained without leave to amend. The trial court determined that the denial of Jensen's motion for nonsuit demonstrated she could not establish a lack of probable cause as to the remaining causes of action that went to trial.

At the hearing, the trial court stated that written evidentiary rulings would be forthcoming. The next day, the trial court issued a separate order in which it sustained in part and overruled in part Charon's and Segal's evidentiary objections to Carl's declaration. Peachtree and Jensen appealed from the orders granting the motions to strike.

### Motions for attorney fees.

Shrenger, the Marcin Lambirth attorneys and Miller moved for an award of attorney fees pursuant to section 425.16, subdivision (c)(1). Peachtree and Jensen opposed the motion, arguing in part that fees were not available because the Marcin Lambirth attorneys were represented by one of their own employees. In support of their opposition, they submitted evidence designed to show that counsel for the Marcin Lambirth attorneys, Mark Murad (Murad), was associated with the firm. The Marcin Lambirth attorneys and Miller objected to Peachtree's and Jensen's evidence and argued that Murad was a former associate, currently operating as an independent contractor and "of counsel" to the firm. They offered evidence designed to demonstrate that relationship.

The trial court granted Shrenger's and the Marcin Lambirth attorneys' motions, and denied Miller's motion. With respect to Miller, the trial court reasoned the evidence

8

showed she and her attorney Murad were both of counsel at Marcin Lambirth, and there was insufficient evidence to show she incurred attorney fees in bringing the motion. The trial court reduced the amount of the fees requested by the Marcin Lambirth attorneys, declining to award any amount for work performed by Murad. The Marcin Lambirth attorneys appealed.

***Charon's and Segal's Malicious Prosecution Cross-Complaint and Special Motion to Strike.***

In May 2012, Charon and Segal filed a cross-complaint alleging a single cause of action for malicious prosecution on the basis of Peachtree's and Jensen's filing the cross-complaint and first amended cross-complaint in the underlying fraud action. In turn, Peachtree and Jensen filed a special motion to strike. They argued Charon and Segal could not establish a probability of prevailing because, among other reasons, the denial of summary judgment demonstrated probable cause and they relied on advice of counsel. In support of the motion, Jensen submitted her own declaration and incorporated her prior declarations. She attached as exhibits certain pleadings in the underlying fraud action. Charon and Segal opposed the motion, asserting that Peachtree's and Jensen's arguments were premised on their concealment of evidence and fraud. In support of their opposition, they submitted Segal's declaration, pleadings, motions, orders, deposition excerpts and a number of documents relating to the Cass property. They also filed evidentiary objections to Jensen's declaration. Peachtree and Jensen replied and filed evidentiary objections.

Following a July 2012 hearing, the trial court granted the motion to strike. Again adopting its tentative ruling as its final order, the trial court ruled Charon and Segal failed to meet their burden to show a probability of prevailing on any claims. The trial court overruled the evidentiary objections to Jensen's declaration, and sustained in part and overruled in part the objections to Segal's declaration.

Charon and Segal appealed. On our own motion, we consolidated their appeal with those of Peachtree and Jensen and the Marcin Lambirth attorneys.

9

We address the four challenged rulings:  The trial court's granting the Attorneys' motion to strike, granting in part Charon's and Segal's motion to strike, denying in part the Marcin Lambirth attorneys' motion for attorney fees and granting Peachtree's and Jensen's motion to strike.

## I.    Applicable Law Governing Special Motions to Strike and Standards of Review.

A special motion to strike under section 425.16, also known as the "anti-SLAPP"[3] statute, allows a defendant to seek early dismissal of a lawsuit involving a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)

A defendant bringing a special motion to strike a complaint must make "a threshold showing that the challenged cause of action is one arising from protected activity" as defined in section 425.16, subdivision (b)(1).  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  "'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

"'If the defendant makes that showing, the burden shifts to the plaintiff to establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor.'  [Citation.]"  (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613; see also *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [the defendant bears the burden on the threshold issue, while the plaintiff bears the burden on the second issue].)  "In assessing the probability of prevailing, a court looks to the

---

[3]      "SLAPP is an acronym for 'strategic lawsuit against public participation.'"  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

evidence that would be presented at trial, similar to reviewing a motion for summary judgment; a plaintiff cannot simply rely on its pleadings, even if verified, but must adduce competent, admissible evidence. [Citations.]" (*Roberts v. Los Angeles County Bar Assn., supra,* at pp. 613–614; accord, *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346 [the plaintiff's showing "must consist of evidence that would be admissible at trial"]; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497–1498 [an averment on information and belief is insufficient to show a probability of prevailing].) "The court also considers the defendant's opposing evidence, but only to determine if it defeats the plaintiff's showing as a matter of law. [Citation.] That is, the court does not weigh the evidence or make credibility determinations. [Citations.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.)

We review de novo the legal question of whether the special motion to strike was properly granted, conducting an independent review of the record. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*); *Bleavins v. Demarest* (2011) 196 Cal.App.4th 1533, 1539; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016.) In other words, "our review is conducted in the same manner as the trial court in considering an anti-SLAPP motion." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672.) We review the trial court's ruling and not its rationale. (E.g., *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 80.)

We review evidentiary rulings made in connection with a special motion to strike for an abuse of discretion. (*Hall v. Time Warner, Inc., supra,* 153 Cal.App.4th at p. 1348, fn. 3; *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1444.) "'A trial court's exercise of discretion in admitting or excluding evidence . . . will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice . . . .' [Citations.]" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1419.) But in order to demonstrate an abuse of discretion, an appellant must affirmatively challenge the evidentiary rulings on appeal. In other words, the asserted

11

erroneous evidentiary rulings must be identified "as a distinct assignment of error" and be supported by analysis and citation to authority. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) When an appellant fails to do so, "any issues concerning the correctness of the trial court's evidentiary rulings have been waived. [Citations.]" (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015.)

## II. The Trial Court Properly Granted the Attorneys' and Charon's and Segal's Special Motions to Strike.

In separate orders after separate hearings, the trial court first granted the Attorneys' special motion to strike and thereafter, with one exception, granted Charon's and Segal's special motion to strike. Both motions addressed Peachtree's and Jensen's complaint alleging a single cause of action for malicious prosecution. And in both orders, the trial court ruled that the moving parties demonstrated the cause of action arose from protected activity and that Peachtree and Jensen failed to demonstrate a probability of prevailing. We find no error.

### A. *Arising from Protected Activity.*

In their malicious prosecution complaint, Peachtree and Jensen alleged that the underlying fraud action was prosecuted without probable cause and with malice. As explained in *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215: "The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." (Accord, *Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at pp. 734–735 ["by its terms, section 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch"]; *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047 ["malicious prosecution action arises from acts in furtherance of defendants' right of petition or free speech"].) We agree with the trial court that the Attorneys and Charon and Segal satisfied their threshold burden to show the complaint arose from protected activity, as the allegations related to the filing of an action and their right to petition.

12

We reject Peachtree's and Jensen's argument that their allegations concerning the withdrawal letter established the moving parties had engaged in unlawful or criminal activity that would not qualify as protected activity under section 425.16. In *Flatley, supra,* 39 Cal.4th at page 305, the court held communications that amounted to criminal extortion were not protected activity under the anti-SLAPP statute. There, the defendant attorney sent a letter to an entertainer threatening to publicly accuse him of rape unless he "settled" by paying a sum of money to assure silence. (*Id.* at pp. 308–309, 329.) Relying on Penal Code section 518's definition of extortion as "'the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear,'" the Supreme Court deemed the letter "criminal extortion as a matter of law." (*Flatley, supra,* at pp. 326, 330.) The Court held "that where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Id.* at p. 320.)

Peachtree and Jensen maintain that Charon's statements in the withdrawal letter constituted extortion as a matter of law. They alleged Charon and Segal "threatened JENSEN that if she would not pay them a sum of money, then they would seek to intervene in the Silver Action" and further alleged Charon and Segal threatened Peachtree and Jensen "that if they did not 'cure' what they alleged to be 'damages' sustained as the alleged result of acts by JENSEN in connection with the Cass Property—by JENSEN or PEACHTREE paying to SEGAL and/or CHARON SOLUTIONS a sum of money [*i.e.*, $300,000]—that they would not only sue JENSEN and/or PEACHTREE for more than a million dollars" and would also complain about Jensen's unethical conduct "to the Department of Real Estate." In the withdrawal letter—which Peachtree and Jensen offered as an exhibit in opposition to the motions to strike—Charon asked for a settlement meeting and offered to pay for Peachtree's counsel's time, and stated that it

13

would seek to intervene in the event a meeting did not take place or it did not receive suitable responses to its inquiries. After outlining the reasons for its withdrawal from P&P and requesting reimbursement of its investment in P&P—then valued at approximately $22,000—Charon wrote: "Further, you are advised that I will be seeking damages in the amount of $300,000 for lost profits and estimated punitive damages in the amount of $1,200,000 (that figure may rise as my investigation uncovers more information). Further, I reserve the right to refer the case to the Department of Real Estate, but will refrain from doing so at this time to give you an opportunity to cure."

Lest every prelitigation settlement demand be deemed extortion, the *Flatley* Court cautioned that its "conclusion that Mauro's communications constituted criminal extortion as a matter of law are based on the specific and extreme circumstances of this case. Extortion is the threat to accuse the victim of a crime or 'expose, or impute to him . . . any deformity, disgrace or crime' (Pen. Code, § 519) accompanied by a demand for payment to prevent the accusation, exposure, or imputation from being made. Thus, our opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion." (*Flatley, supra,* 39 Cal.4th at p. 332, fn. 16.) Accordingly, cases following *Flatley* have concluded that prelitigation threats similar to those made in the withdrawal letter are protected activity. (See, e.g., *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1481 [landlord's prelitigation threats to tenants, including demanding rent above lease amount, commencing action after consultation with a federal judge and warning they would never be able to rent another apartment in the area, deemed communications protected by § 425.16]; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36–37 [attorney's voicemail message to client's sister accusing her of conspiracy to defraud and threatening "to take 'appropriate action'" held protected activity made in anticipation of litigation which the attorney "'contemplated in good faith and under serious consideration'"].)

14

Here, the Attorneys, Charon and Segal have not conceded, nor did any evidence conclusively establish, that their protected activities constituted illegal extortion. The withdrawal letter is unlike the demand letter in *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, 807, which the court held constituted criminal extortion as a matter of law outside the protection of the anti-SLAPP statute. In relevant part, the defendant attorney's demand letter in that case stated: "'As you are aware, I have been retained to represent Media Print & Copy ("Media"). We are in the process of uncovering the substantial fraud, conversion and breaches of contract that your client has committed on my client. . . . To date we have uncovered damages exceeding $75,000, not including interest applied thereto, punitive damages and attorneys' fees. If your client does not agree to cooperate with our investigation and provide us with a repayment of such damages caused, we will be forced to proceed with filing a legal action against him, as well as reporting him to the California Attorney General, the Los Angeles District Attorney, the Internal Revenue Service regarding tax fraud, the Better Business Bureau, as well as to customers and vendors with whom he may be perpetrating the same fraud upon [*sic*].'" (*Id*. at p. 802.) The court found that the attorneys' threat to report criminal conduct to applicable enforcement agencies and others, coupled with the demand for the payment of money, constituted extortion as a matter of law. (*Id.* at p. 806.) Here, in contrast, the withdrawal letter threatened to seek damages through litigation; though Charon reserved the right to report Jensen's conduct, it did not threaten to report Jensen's conduct unless she paid a sum of money.

In any event, even if we could construe the withdrawal letter as being extortionate, the letter did not form the basis for Peachtree's and Jensen's malicious prosecution complaint. Rather, the complaint was based on the filing and prosecution of the complaint and first amended complaint in the underlying fraud action. "In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.) "[W]here the defendant shows that the gravamen of a cause of action is based on

15

nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis." (*Id.* at p. 1551, fn. 7; accord, *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 197 ["Since the protected activity is not merely incidental, the first prong is satisfied and the burden shifts to plaintiff MF to show a probability of success on the merits"].) Because the underlying fraud action was far more than incidental to Peachtree's and Jensen's malicious prosecution complaint, we conclude the Attorneys, Charon and Segal met their burden to establish the complaint arose from protected activity.

### B. Probability of Success on the Merits.

Once the moving parties established that Peachtree's and Jensen's malicious prosecution complaint arose out of activity protected by the anti-SLAPP law, the burden shifted to them to demonstrate a probability they could prevail on the merits of their complaint. To establish a probability of prevailing, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

In order to show a probability of prevailing on their malicious prosecution claim, Peachtree and Jensen were required to show the underlying fraud action was (1) initiated by or at the direction of the party that is the defendant in the malicious prosecution action, (2) legally terminated in favor of the party that is the plaintiff in the malicious prosecution action, (3) initiated without probable cause, and (4) initiated with malice. (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740.) To defeat the special motions to strike, Peachtree and Jensen were required to establish a probability of success as to all elements of their claim. (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875; *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1527; *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1058.) In other words, if the party opposing a special motion to strike is unable to establish a

16

probability of prevailing on even one element, the trial court must grant the motion to strike, as it did here.

### 1. Peachtree failed to show it received a favorable termination on the merits.

Charon's initial complaint in the underlying fraud action alleged several causes of action against both Peachtree and Jensen. They demurred to each cause of action on the grounds Charon failed to plead facts sufficient to state a cause of action and each cause of action was uncertain. The trial court overruled the demurrer to the extent it argued the complaint was barred by the statute of limitations and, without further specificity, sustained the demurrer with leave to amend as to Peachtree. Charon's first amended complaint did not name Peachtree as a defendant. Consequently, in January 2010, the trial court dismissed the complaint with prejudice as to Peachtree and entered a partial judgment of dismissal in its favor. In connection with Charon's and Segal's special motion to strike, the trial court ruled Peachtree failed to establish its dismissal from the underlying fraud action constituted a favorable termination on the merits.[4]

"In order for the termination of a lawsuit to be considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit. . . . Where a proceeding is terminated other than on the merits, the reasons underlying the termination must be examined to see if the termination reflects the opinion of either the court or the prosecuting party that the action would not succeed. [Citation.]" (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1814.) "If the resolution of the underlying litigation 'leaves some doubt as to the defendant's innocence or liability[, it] is *not* a favorable termination,

---

[4]     As to the Attorneys, the trial court found Peachtree's malicious prosecution claim accrued in January 2010 and ruled Peachtree could not prevail because the applicable one-year statute of limitations barred its claim. Because we find the lack of favorable termination dispositive as to all moving parties, we need not address this alternative reason for concluding Peachtree could not demonstrate a probability of prevailing.

17

and bars that party from bringing a malicious prosecution action against the underlying plaintiff.' [Citation.]" (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855.)

Though Peachtree maintains that a voluntary dismissal is, without exception, a favorable termination on the merits, the law is to the contrary.**5** Addressing whether a voluntary dismissal satisfies the first element of a malicious prosecution claim, the court in *Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 893–894, explained: "'A voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action and may constitute a decision on the merits. [Citations.] "It is not enough, however, merely to show that the proceeding was dismissed." [Citation.] The reasons for the dismissal of the action must be examined to determine whether the termination reflected on the merits.' [Citations.] A voluntary dismissal on technical grounds, such as lack of jurisdiction, laches, the statute of limitations or prematurity, does not constitute a favorable termination because it does not reflect on the substantive merits of the underlying claim. [Citations.]" (See also *Contemporary Services Corp. v. Staff Pro Inc., supra,* 152 Cal.App.4th at pp. 1056–1057 [voluntary dismissal to avoid costly litigation not a favorable termination on the merits]; *Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 344 [voluntary dismissal to avoid cost and inconvenience of second trial not a favorable termination on the merits].)

Here, Peachtree did not meet its burden to show that its omission from the first amended complaint reflected either the trial court's, the Attorneys' or Charon's decision the action would not be successful. The trial court sustained Peachtree's demurrer with leave to amend, thereby leaving open the possibility that Charon's claim could succeed. There was no evidence—including in Jensen's declaration submitted in opposition to Charon's and Segal's special motion to strike—to show that the Attorneys or Charon

---

**5** The cases Peachtree cites are not even relevant to let alone supportive of its point. (See *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909 [plaintiff may voluntarily dismiss a complaint following an anti-SLAPP motion]; *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1776 [defendant has the right to seek costs after a dismissal]; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1085 [dismissal with prejudice of municipal court action operated as res judicata barring superior court action].)

18

failed to include Peachtree in the first amended complaint because they opined the claim would not succeed. We agree with the trial court "[t]he evidence presented is insufficient to determine that the claims against Peachtree Financial and the decision to remove Plaintiff as a defendant in the underlying litigation were based on the merits." For this reason, Peachtree's reliance on *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385 is misplaced. There, the finding of favorable termination was based on evidence reasonably suggesting the plaintiff's dismissal occurred because the claims lacked merit; the evidence included the plaintiff's failure to appear for two depositions and discovery responses indicating she sustained no damage. (*Id*. at pp. 1400–1401.) Because Peachtree failed to make such an evidentiary showing, it could not demonstrate a probability of prevailing on one of the essential elements of its malicious prosecution claim.[6]

### 2. Jensen failed to show the Attorneys and Charon lacked probable cause to file and litigate the first amended complaint.

With respect to Jensen, we find dispositive the evidence showing probable cause to initiate and prosecute the underlying fraud action. For that reason, we will address the element of probable cause first and exclusively. (See *Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 448 [resolving probable cause element first for purposes of anti-SLAPP motion].) The central element of probable cause is "a legal question to be resolved by the court." (*Plumley v. Mockett, supra,* 164 Cal.App.4th at p. 1047.)

A defendant is not liable for malicious prosecution if it had probable cause to initiate and maintain the prior lawsuit. This element requires the court to make an objective determination as to the reasonableness of the defendant's conduct to ascertain whether, on the facts known to the defendant, institution of the prior action was

---

[6] In light of our conclusion Peachtree did not show a probability of success on the favorable termination element of malicious prosecution, we need not reach the parties' arguments on the probable cause and malice elements of the cause of action, their other arguments related to favorable termination or their statute of limitations argument.

19

objectively legally tenable.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*).)  "A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164–165.)  "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970.)  Probable cause must exist for every cause of action advanced in the underlying suit.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 678–679.)  "If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated." (*Sheldon Appel, supra*, at p. 875.)

"Under established law, certain nonfinal rulings on the merits may serve as the basis for concluding that there was probable cause for prosecuting the underlying case on which a subsequent malicious prosecution action is based.  [Citation.]" (*Paiva v. Nichols, supra,* 168 Cal.App.4th at p. 1020.)  Though the jury in the underlying fraud action ultimately found in Jensen's favor, multiple interim rulings demonstrated that the Attorneys and Charon had probable cause to bring and pursue the first amended complaint in that action.  Initially, the trial court overruled Jensen's demurrer to the four causes of action first alleged in the original complaint and subsequently re-alleged in the first amended complaint.  (See *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 626 ["because the trial court overruled Swat–Fame's demurrer to the fraud claim, the lawyers necessarily had probable cause to bring the claim for fraud"], disapproved on another point in *Zamos v. Stroud, supra,* 32 Cal.4th at p. 973; see also *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 365 [applying *Swat-Fame* to the denial of a motion to dismiss in federal court, and characterizing *Swat-Fame* setting forth a "sound rule, . . . consistent with the principle that '[c]laims that have

20

succeeded at a hearing on the merits . . . are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness'"].)

Following the demurrer ruling, the trial court denied Jensen's motion for summary judgment. While the interim adverse judgment rule first provided that a victory at trial reversed on appeal sufficed to establish probable cause, the rule has been extended to the denial of a defense motion for summary judgment. (*Antounian v. Louis Vuitton Malletier, supra* 189 Cal.App.4th at p. 450.) Our Supreme Court in *Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at page 824, elaborated: "Denial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict . . . . [A] claimant or attorney who is in possession of such evidence has the right to bring the claim, even where it is very doubtful the claim will ultimately prevail." (Accord, *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 550 [it is a "well-established rule of law applicable to a malicious prosecution complaint that the denial of a summary judgment motion in the underlying action establishes probable cause to file that lawsuit"]; *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 ["denial of defendant's summary judgment in an earlier case normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit"].)[7]

Finally, at the conclusion of the evidence during the trial in the underlying fraud action, the trial court denied Jensen's motion for nonsuit. She argued there was

---

[7]     Because the summary judgment ruling addressed only whether the statute of limitations barred the action, the trial court did not find the denial of the motion indicative of probable cause. It relied on the *Wilson* court's qualification that "[d]enial of a summary judgment motion on procedural or technical grounds, rather than for existence of triable issues of material fact, says nothing regarding the potential merit of the action and hence does not establish probable cause for its initiation." (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 823.) We need not resolve here whether overcoming a statute of limitations bar is a technical or procedural ground unrelated to the action's merits, given the other favorable interim rulings that involved the claims' merits.

21

insufficient evidence to support any of the four causes of action alleged in the first amended complaint, emphasizing the lack of evidence of damages. Charon opposed the motion, summarizing the evidence supporting its claims. The trial court ruled there was "sufficient evidence for the jury to decide these issues." This ruling established that Charon had probable cause to bring the underlying fraud action, as the denial of a motion for nonsuit "is tantamount to a judicial declaration that, at a minimum, the . . . claims were objectively tenable." (*Hufstedler, Kaus & Ettinger v. Superior Court* (1996) 42 Cal.App.4th 55, 69; see also *Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 824 [finding that denial of a motion for nonsuit establishes the plaintiff can substantiate its claims with sufficient evidence to support a favorable verdict].)

Jensen argues that these interim rulings cannot support a finding of probable cause because they were obtained by fraud or perjury. (See *Plumley v. Mockett, supra,* 164 Cal.App.4th at p. 1053 [describing exception to interim adverse judgment rule "where the underlying victory was obtained by fraud or perjury"]; see also *Roberts v. Sentry Life Insurance, supra,* 76 Cal.App.4th at p. 384 ["if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong"].) The "fraud exception" requires both """"knowing use of false and perjured testimony"""" and a showing that the interim ruling would not have been made "but for" the use of the false evidence. (*Antounian v. Louis Vuitton Malletier, supra*, 189 Cal.App.4th at p. 452.)

Jensen cannot raise the fraud exception against the Attorneys because she cannot support her contention with any admissible evidence. Her election not to include the trial court's evidentiary rulings as part of her appendix does not change their effect. The trial court sustained all but one of the Attorneys' 15 evidentiary objections to her and Carl's declarations, which effectively struck the entire declarations from evidence. Notably, objection numbers five and six were directed to Jensen's "evidence" that the denial of summary judgment and nonsuit involved false testimony. Because she has denied their existence, Jensen has not challenged the evidentiary rulings on appeal. Consequently, we deem any issue concerning those rulings to have been waived and find the evidence was

22

properly excluded. (E.g., *Roe v. McDonald's Corp., supra,* 129 Cal.App.4th at pp. 1113–1115.) Absent any evidence of Charon's fraud in connection with the interim rulings, Jensen cannot meet her burden to overcome the effect of those rulings demonstrating probable cause.

The same evidentiary rulings were not made in connection with Charon's and Segal's special motion to strike. Nonetheless, even if we consider Jensen's evidence, we cannot conclude the fraud exception applies. Her declaration outlines in detail the supposed false testimony given by Segal at trial which formed the basis of the denial of the motion for nonsuit. Such testimony included Segal's claim that Jensen concealed the existence of the Silver action from him, concealed the existence of the lis pendens recorded by Silver against the Cass property and concealed her obtaining a line of credit against the Cass property. That testimony, however, was already considered by the jury in the underlying fraud action. Though Jensen seeks to characterize Segal's testimony as false, the jury concluded otherwise, making the finding in its special verdict that Jensen and Charon were in a special relationship of trust or confidence and that Jensen "intentionally fail[ed] to disclose an important fact that Charon Solutions, Inc. did not know and could not reasonably have discovered." We agree with the conclusion in *Plumley v. Mockett, supra,* 164 Cal.App.4th at page 1056 "that where claims of fraud or perjury are litigated and rejected by a fact finder in an underlying case, those same claims cannot be relied on to establish the absence of probable cause in a subsequent malicious prosecution suit. Stated differently, one cannot relitigate adversely decided factual matters for purposes of establishing the fraud exception to the interim adverse judgment rule." (See also *Paiva v. Nichols, supra,* 168 Cal.App.4th at p. 1027 [alleged misrepresentations that were raised before the trial court cannot be used to show the trial court's ruling was fraudulently induced].) Thus, the testimony cited by Jensen cannot support application of the fraud exception. Moreover, Jensen's failure to demonstrate that Segal knowingly used false or perjured testimony constitutes an independent basis why the fraud exception does not apply. (See *Antounian v. Louis Vuitton Malletier,*

*supra*, 189 Cal.App.4th at p. 452.) Accordingly, the interim rulings likewise established probable cause for the purpose of Charon's and Segal's special motion to strike.

We find no merit to Jensen's remaining challenge that Charon could not have had probable cause to institute the underlying fraud action because it lacked standing to bring claims for injuries suffered by P&P. The court in *Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 445, summarized the relevant principles: "Standing is a threshold issue, because without it no justiciable controversy exists. [Citation.] 'Every action must be prosecuted in the name of the real party in interest . . . .' [Citation.] 'Generally, "the person possessing the right sued upon by reason of the substantive law is the real party in interest." [Citations.]' [Citation.] To have standing, a party must be beneficially interested in the controversy, and have 'some special interest to be served or some particular right to be preserved or protected.' [Citation.] This interest must be concrete and actual, and must not be conjectural or hypothetical. [Citation.]" Lack of standing is a jurisdictional defect that mandates dismissal of an action, and it can be raised for the first time at any stage in the action. (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 501.)

In view of the mandated remedy for lack of standing, we need not address Jensen's final challenge. Even if we were to conclude that Charon lacked standing, such a finding would not change our disposition, as it would negate the favorable termination element of Jensen's malicious prosecution claim. (See *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 26, fn. 30 ["we question whether even a dismissal based on any lack of standing or exhaustion of administrative remedies should be held to reflect on the *merits*"]; *Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827 ["a dismissal . . . for lack of jurisdiction . . . not only is not on the merits, it is unreflective of the merits"].) In other words, if Jensen were able to show a lack of probable cause due to Charon's lack of standing, she would be unable to show the underlying fraud action was favorably terminated on the merits. She would be unable to demonstrate a probability of prevailing

24

on one of the critical elements of her malicious prosecution claim, and we would conclude the special motion to strike was properly granted as to Charon and Segal.[8]

### 3. Peachtree and Jensen failed to show Schrenger acted with malice.

Because a malicious prosecution action may be based on a single cause of action in a lawsuit involving multiple claims (see *Crowley v. Katleman, supra,* 8 Cal.4th at p. 693), we discuss the remaining two causes of action that were alleged in the original complaint but not the first amended complaint in the underlying fraud action. The trial court denied Charon's and Segal's motion to strike as to those two claims on the basis that Jensen met her burden to establish a probability of prevailing on all three malicious prosecution elements as to those parties. In connection with the Attorneys' special motion to strike, however, the trial court ruled Jensen failed to meet her burden to establish the element of malice.[9] We agree that Peachtree's and Jensen's failure to offer admissible evidence showing malice supported the trial court's conclusion that they could not establish a probability of prevailing against Shrenger on the unjust enrichment and declaratory relief claims alleged in the original complaint.

The malice element of malicious prosecution "relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The

---

[8]  We acknowledge that the parties again have raised multiple arguments in support of and in opposition to Jensen's position that the order granting the special motion to strike should be reversed. "Ordinarily, when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds which may be available." (*Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029.) We find no basis to depart from the ordinary rule.

[9]  We note that the trial court also ruled Jensen could not establish a probability of prevailing for her failure to offer evidence of malice in connection with the conversion claim alleged in the first amended complaint, explaining that claim was not part of the motion for nonsuit. The trial court made no such distinction in its later order granting in part Charon's and Segal's motion to strike, and we likewise find no admissible evidence in the record establishing that the motion for nonsuit was not directed to all claims alleged in the first amended complaint.

25

motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive. [Citation.] It may range anywhere from open hostility to indifference. [Citation.]" (*Downey Venture v. LMI Ins. Co* (1998) 66 Cal.App.4th 478, 494.)

Shrenger represented Charon when it filed the original complaint against Peachtree and Jensen in December 2009.[10] Approximately three months later, he moved to be relieved as counsel and ultimately substituted out of the action before the first amended complaint was filed. In support of his special motion to strike, Shrenger submitted a declaration in which he averred he evaluated the facts as provided to him by Segal, he had no reason to know that any of the information Segal provided was inaccurate or untruthful, and he filed the complaint against Peachtree and Jensen on the basis of Segal's information and his own business litigation experience. He further averred that he had no knowledge of Peachtree or Jensen before being retained by Charon, and he bore no "ill will or malice towards either of these parties." He stated that his "sole intention in drafting and filing the Complaint was to obtain the redress for CHARON which, based upon the information that had been provided to me, I believed it to be entitled."

While Shrenger established the absence of any improper motive, Jensen offered no admissible evidence to support a showing of malice. Nonetheless, she argues that malice should be inferred from evidence showing a lack of probable cause. (See *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 292.) Again, however, her contention

---

**10**     There was no evidence offered to show that any of the other Attorneys were involved in the decision to file the unjust enrichment and declaratory relief causes of action, and those Attorneys did not maintain those claims once they were counsel of record. Thus, Peachtree and Jensen failed to show any probability of prevailing against them on those two claims. (See *Sycamore Ridge Apartments LLC v. Naumann, supra*, 157 Cal.App.4th at p. 1410 ["An attorney who associates into a case that is being maliciously prosecuted participates in harming the defendant for the time period that the attorney allows the untenable claims to remain alive"].)

26

fails for a lack of evidence. In making an assessment of legal tenability, an attorney is entitled to rely on the information provided by his or her client, unless the attorney is on notice of specific factual errors or misstatements in the client's version of events that render the claim untenable. (*Swat-Fame, Inc. v. Goldstein, supra,* 101 Cal.App.4th at pp. 625–627.) Peachtree and Jensen offered no evidence to demonstrate that Schrenger did not reasonably rely upon Segal's representations. Accordingly, we agree with the trial court that the evidence was insufficient to support a showing of malice, and Peachtree and Jensen therefore failed to satisfy their burden of establishing a probability of success on the remaining aspect of the malicious prosecution claim.

**III.    The Trial Court Properly Denied a Portion of the Marcin Lambirth Attorneys' Motion for Attorney Fees.**

Following the trial court's granting their special motion to strike, the Marcin Lambirth attorneys moved for an award of attorney fees pursuant to section 425.16, subdivision (c).[11] Initially, they sought recovery of $44,893.86 in fees and costs, which included time spent by attorneys Murad, Michael W. Feenberg and Johnathan B. Cole. In support of the motion, Murad submitted a declaration averring that he represented the Marcin Lambirth attorneys in defending against Peachtree and Jensen's malicious prosecution action and drafted the anti-SLAPP motion. Attached to his declaration were copies of the invoices he submitted to the Marcin Lambirth attorneys. Before the hearing on the anti-SLAPP motion, he had substituted out of the action, and Feenberg and Cole thereafter represented the Marcin Lambirth attorneys.

Peachtree and Jensen opposed the motion. Their primary argument was that Murad was actually an employee of Marcin Lambirth and therefore the firm was essentially self-represented. Peachtree's and Jensen's counsel submitted a declaration attaching evidence showing that Murad was listed as an attorney on the firm's Web site, he appeared in firm photographs on the Web site, a local Bar Association article

---

[11]    Shrenger and Miller also moved for attorney fee awards, but they have not challenged the trial court's rulings on their motions.

27

described Murad as a firm associate, a publication from the same local Bar Association provided a Marcin Lambirth e-mail address for Murad, both Marcin Lambirth's and Murad's individual listings on the Martindale Hubbell Web site described Murad as an attorney with the firm, and Murad's "LinkedIn" profile identified him as an attorney at Marcin Lambirth.

In reply, the Marcin Lambirth attorneys reduced their fee request to $31,423.22 for an unrelated and inadvertent inclusion of attorney time. They also offered evidence— through their joinder in Miller's reply—to demonstrate that Murad was merely "of counsel" to Marcin Lambirth and represented the firm in the capacity of an independent contractor. Murad declared that he had been an associate at Marcin Lambirth from October 2007 to October 2008 and thereafter became of counsel to the firm; since 2009 he was compensated by the firm as an independent contractor. He attached current information from the City of Pasadena, the California State Bar, Martindale Hubbell and LinkedIn showing a business address separate from Marcin Lambirth. Attorney Marcin similarly averred that Murad was not an employee or associate of the firm while the malicious prosecution action was litigated.

Following a March 2012 hearing, the trial court denied the motion to the extent it sought attorney fees incurred for Murad and granted the balance of the motion. It ruled that Marcin Lambirth's evidence was insufficient to show the actual relationship between Murad and the firm beyond Murad's of counsel status. More specifically, there was no evidence offered to show that Marcin Lambirth was required to pay fees to Murad, that Murad and Marcin Lambirth had an attorney-client relationship or that Murad's business was to represent his own individual clients as opposed to clients of the firm. Accordingly, the trial court reduced the amount requested by $14,098.44—the amount attributable to Murad's work.

Section 425.16, subdivision (c)(1) provides that a defendant who prevails on a special motion to strike is "entitled to recover his or her attorney's fees and costs." The California Supreme Court has therefore instructed that "any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v.*

28

*Moses* (2001) 24 Cal.4th 1122, 1131.) The amount of the fee award, however, is left to the trial court's discretion. (*Id.* at p. 1134.) "The reason is that the ""experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"" [Citations.]" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 556–557.) But where the question does not involve the amount of the fee award, but whether fees should be awarded at all, the question becomes one of law that we review independently. (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378; *Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.* (2007) 153 Cal.App.4th 977, 981.)

In determining whether attorney fees have been incurred for the purpose of awards under section 425.16, subdivision (c), courts have relied on cases construing fee awards to prevailing parties under Civil Code section 1717. (*Carpenter & Zuckerman, LLP v. Cohen, supra*, 195 Cal.App.4th at pp. 378–380.) The case law regarding contractual attorney fee awards is clear. The court in *Sands & Associates v. Juknavorian* (2012) 209 Cal.App.4th 1269, 1272 (*Sands*), held "a law firm cannot recover attorney fees under a prevailing party clause when, as a successful litigant, it is represented by 'of counsel.'" The *Sands* court premised its conclusion "on two well-settled principles. First, when a law firm is the prevailing party in a lawsuit and is represented by one of its partners, members, or associates, it cannot recover attorney fees even though the litigation is based on a contract with a prevailing party clause. [Citations.] [¶] Second, the relationship between a law firm and 'of counsel' is "'close, personal, continuous, and regular.'" [Citation.] "'[T]o the extent the relationship between [an attorney] or law firm and another [attorney] or law firm is sufficiently 'close, personal, regular and continuous,' such that one is held out to the public as 'of counsel' for the other, the . . . relationship must be considered a *single, de facto firm* for purposes of [avoiding the representation of adverse interests].'" [Citations.]" (*Id.* at pp. 1272–1273.)

29

Here, the evidence was undisputed that Murad was of counsel to Marcin Lambirth at the time he represented the firm in connection with the malicious prosecution action. Marcin averred "Mr. Murad has been 'of counsel' to Marcin Lambirth, LLP, and has been an independent contractor with Marcin Lambirth, LLP, since October 2008." Murad similarly declared that "[s]ince October 2008, I have been 'Of Counsel' to Marcin Lambirth, LLP, and I have been an independent contractor." Similarly, in *Sands, supra,* 209 Cal.App.4th at page 1295, the evidence showed the firm communicated to the public via firm letterhead and directories that the two attorneys were of counsel, and the court concluded "it does not matter that they may have represented clients obtained through their own efforts, that they had what they call a 'separate' practice, or that they were not on the firm's payroll." The *Sands* court held "[i]n light of the close, personal, continuous, and regular relationship between the Sands firm and Of Counsel [citation], we conclude that, in recovering the unpaid attorney fees from Juknavorian, Of Counsel were pursuing the interests of the Sands firm and their own personal interests; the firm and Of Counsel had the same interests. [Citations.]" (*Id.* at p. 1296–1297.) The court added that "because the firm and Of Counsel constituted a 'single, de facto firm' [citation], an attorney-client relationship did not exist between them. [Citations.]" (*Id.* at p. 1297.)

Though the Marcin Lambirth attorneys argue the evidence was insufficient to show that Murad remained associated with the firm, their own declarations established that he served as of counsel to the firm. In light of that relationship, we find *Sands, supra*, 209 Cal.App.4th 1269 controlling. "[B]ecause the relationship between a law firm and 'of counsel' is close, personal, regular, and continuous, we conclude that a law firm and 'of counsel' constitute a single, de facto firm, and thus a law firm cannot recover attorney fees under a prevailing party clause when, as a successful litigant, it is represented by 'of counsel.'" (*Id.* at p. 1273.) The trial court properly declined to award attorney fees for work performed by Murad.

**IV. The Trial Court Properly Granted Peachtree's and Jensen's Special Motion to Strike.**

In its order granting Peachtree's and Jensen's special motion to strike the malicious prosecution cross-complaint filed by Charon and Segal, the trial court ruled Peachtree and Jensen met their burden to show the cross-complaint arose from protected activity and Charon and Segal failed to meet their burden to demonstrate a probability of prevailing on the merits. More specifically, the trial court ruled that the denial of summary judgment on the breach of contract cause of action in the cross-complaint in the underlying fraud action established the objective tenability of that claim, and it rejected Charon's and Segal's argument that the summary judgment ruling was induced by the use of false or perjured testimony. As to the remaining claims for breach of fiduciary duty, fraud, negligence and declaratory relief which were disposed of by demurrer, the trial court determined Charon and Segal failed to provide evidence that those claims lacked probable cause. We find no basis to disturb the trial court's order.

*A.     Additional Background Related to Pleadings Underlying the Motion to Strike.*

After the trial court sustained a demurrer with leave to amend, Peachtree filed a first amended cross-complaint against Charon and Segal in the underlying fraud action.[12] It generally alleged that Segal represented to Jensen he had significant real estate development experience and was familiar with the government permit and entitlement process. In reliance on Segal's "representations of his experience and expertise in the development and construction fields, and his representation of his knowledge and proficiency in dealing with governmental entities," Peachtree agreed to enter into a partnership with Charon.

In connection with the breach of contract cause of action, Peachtree alleged that Peachtree and Charon entered into the P&P Operating Agreement and, in furtherance of

---

[12]     The trial court sustained the demurrer without leave to amend as to the breach of fiduciary duty claim against Segal.

31

that agreement, Jensen and Segal entered into an oral agreement whereby Segal would employ his services to obtain a lot split of the Cass property. Upon completion of the lot split, a portion of the Cass property would be conveyed to P&P for development. Peachtree alleged that it and Jensen performed the terms of the P&P Operating Agreement and the oral agreement, but that Segal failed to competently pursue the lot split and to achieve the lot split, and in turn caused Charon to withdraw from P&P.

The second cause of action for breach of fiduciary duty alleged against Charon identified a number of specific breaches, generally categorized as misrepresenting Segal's skill and expertise in real estate development, failing to further P&P's interests by making the required governmental submissions, failing to seek project approval from neighboring property owners and failing to advise Peachtree and Jensen of the negative consequences stemming from a lot split. The third cause of action for fraud against Segal alleged that Jensen reasonably and justifiably relied on his representations about his real estate expertise, that Segal knew such representations were false and that Jensen expended money in reliance on such representations. The fourth cause of action for negligence against Charon and Segal reiterated much of the breach of fiduciary duty claim, and the fifth cause of action sought a judicial determination of the parties' respective rights to the Cass property.

The trial court thereafter sustained demurrers without leave to amend to all causes of action except breach of contract against Charon. After the trial court denied Charon's motion for summary judgment, that claim went to trial and the jury answered "No" to the special verdict question "[d]id Charon Solutions, Inc. fail to do something that the contract required it to do?"

Charon and Segal thereafter filed their malicious prosecution cross-complaint. They alleged the cross-complaint and first amended cross-complaint were brought without probable cause and Jensen's failure to cooperate and initiation of the Silver action led to the demise of the lot split. They further alleged that the denial of summary judgment was the result of Jensen's concealing material documents which had been part

32

of her architect's file and showed the conditions she claimed Segal failed to satisfy had been approved.

### B.      *Charon and Segal Failed to Demonstrate a Probability of Prevailing.*

Because there is no question that the malicious prosecution cross-complaint arose from protected activity, we proceed directly to the second prong of the anti-SLAPP motion and determine whether Charon and Segal established a probability of prevailing. To make this assessment, we "must consider both the legal sufficiency of and evidentiary support for the pleaded claims, and must also examine whether there are any constitutional or nonconstitutional defenses to the pleaded claims and, if so, whether there is evidence to negate those defenses. [Citation.]" (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519.) "[T]he plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. [Citation.]" (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 527.) The plaintiff's showing must be "made through 'competent and admissible evidence.' [Citations.] Thus, declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded. [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.)

In their motion to strike, Peachtree and Jensen focused on the probable cause element of malicious prosecution, and argued both the affirmative defense of advice of counsel and the interim adverse judgment rule demonstrated they had probable cause to file and maintain the cross-complaint. Because we find the advice of counsel defense dispositive, we need not address the other probable cause arguments raised by the parties.

"Lack of probable cause is an essential element of a cause of action for the malicious institution of a civil proceeding. [Citation.]" (*Copenbarger v. International Ins. Co.* (1996) 46 Cal.App.4th 961, 964, fn. omitted.) "'Probable cause may be established by the defendants in a malicious institution proceeding when they prove that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon

the advice of the lawyer.' [Citations.]" (*DeRosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1397–1398.)

Here, in support of the special motion to strike, Jensen averred that after she and Peachtree were served with the complaint in the underlying fraud action, she engaged attorney Alan Carnegie (who had represented her in the Silver action) to represent them. During the course of that representation, they discussed whether to file a cross-complaint. In connection with that determination, Jensen made a full disclosure to Carnegie of all favorable and unfavorable facts known to her related to the matters alleged in the underlying fraud action and provided him with all documents in her possession or control concerning those matters. Jensen's declaration outlined a number of specific facts disclosed to Carnegie concerning Jensen's discussions with Segal about the proposed lot split of the Cass property. She declared: "Based on all of the foregoing, Mr. Carnegie advised me that in his opinion, Peachtree had both a legal and factual basis to file in the underlying action a cross-complaint asserting claims for (i) breach of fiduciary duty, (ii) negligence, and (iii) fraud. He said each of those three claims was well founded in law and factually well supported, and I, as an officer and director of Peachtree, relied upon that advice in authorizing him to file that cross-complaint on behalf of Peachtree." Jensen made similar representations in connection with the filing of the first amended cross-complaint, averring that she relied on his advice in filing that pleading. Further according to her declaration, Jensen outlined the discovery in which she engaged and stated that Carnegie continued to advise her throughout that process that her claims were well founded in fact and law. At no time did Carnegie indicate to her that he no longer considered her claims to be unsupported by fact or law. Jensen averred she "consulted both [*sic*] Mr. Carnegie in good faith, and in good faith relied and acted upon his advice and counsel."

"Good faith reliance on the advice of counsel, after truthful disclosure of all the relevant facts, is a complete defense to a malicious prosecution claim. [Citation.]" (*Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1544 (*Bisno*).) Jensen's declaration was sufficient to raise the defense. As in *Bisno*, her

34

declaration outlined the facts she disclosed to counsel and her good faith reliance on counsel's advice in filing the cross-complaint. (*Id.* at pp. 1544–1547.) The *Bisno* court expressly declined to impose a heightened duty of disclosure on one relying on an advice of counsel defense, rejecting the notion that the client is obligated to point out particular contract provisions that may be detrimental to its position or provide documents that offer nothing more than cumulative information. (*Id.* at pp. 1547–1549.)

Against this defense, Charon and Segal failed to offer admissible evidence to demonstrate a probability of prevailing. To meet its burden on the second prong of an anti-SLAPP motion, the plaintiff opposing the motion must show that "'"'defenses are not applicable to the case as a matter of law *or* by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.'"' [Citations.]" (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 285–286; see also *Flatley v. Mauro, supra,* 39 Cal.4th at p. 323 ["The litigation privilege . . . may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing"]; Weil Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) 7:1015, p. 7(II)–49 [to demonstrate a "'probability of success on the merits,'" "[p]laintiff must present evidence to overcome any privilege or defense to the claim that has been raised"].) Though several courts have stated a defendant moving to strike bears the burden of proof on an affirmative defense (see *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 969; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 477), reliance on advice of counsel need not be raised by way of an affirmative defense (see *State Farm Mut. Auto. Ins. Co. v. Superior Court* (1991) 228 Cal.App.3d 721, 727 ["advice of counsel need not be affirmatively alleged in a malicious prosecution action as a defense to the elements of lack of probable cause and malice"]; *Walker v. Jensen* (1949) 95 Cal.App.2d 269, 275 ["the defense of reliance upon the advice of counsel may be shown under a general denial"]). Accordingly, for the purpose of the motion to strike, Charon and Segal ultimately bore the burden of negating the advice of counsel defense.

35

In an effort to meet their burden, Charon and Segal objected to the portions of Jensen's declaration that addressed her advice of counsel defense; the trial court overruled all objections. On appeal, they maintain the trial court abused its discretion because Jensen's statements were hearsay and conclusory. We find no basis to disturb the trial court's rulings. (See *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385 ["Evidentiary rulings will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice"].) Jensen's statements concerning what she disclosed to Carnegie and what she did in reliance on his advice were evidence of her state of mind in filing and pursuing Peachtree's cross-complaint, and therefore not made inadmissible by the hearsay rule. (Evid. Code, § 1250, subd. (a)(2).) Moreover, the statements were not conclusory, as the level of specificity was similar to statements in other cases found adequate to support an advice of counsel defense.[13] (See, e.g., *Bisno, supra,* 174 Cal.App.4th at pp. 1544–1547; *DeRosa v. Transamerica Title Ins. Co., supra,* 213 Cal.App.3d at p. 1398.) Charon's and Segal's citation to *Wilson v. Superior Court* (1964) 226 Cal.App.2d 715, 722, is not persuasive, as in that case the court found a declaration by counsel stating his "belief" that certain matters were covered by the work product rule did not constitute evidence.

Charon and Segal also challenged the sufficiency of Peachtree and Jensen's showing, arguing that they were required to offer Carnegie's declaration regarding the advice he provided. But they have cited no authority for the proposition that an advice of counsel defense requires a declaration or testimony from counsel, nor have we located any. (See *Warner v. O'Connor* (1962) 199 Cal.App.2d 770, 774–775 [probable cause

---

[13]    Typically, a "conclusory" objection is reserved for expert testimony. (See *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 ["when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests'"].)

36

based on advice of counsel defense found valid on the basis of the plaintiff's testimony]; cf. *Bisno, supra*, 174 Cal.App.4th at p. 1544 [characterizing attorney declarations as "back[ing] up" the plaintiff's advice of counsel defense, but not suggesting such declarations were required].)

Charon and Segal's central contention is that Peachtree and Jensen may not rely on the advice of counsel defense because they concealed evidence. As explained in *Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1383, "if the defendant acted in bad faith or withheld facts from counsel he or she knew or should have known would have defeated the cause of action, probable cause is not established. '[C]ounsel's advice must be sought in good faith [citation] and ". . . not as a mere cloak to protect one against a suit for malicious prosecution." [Citation.]' [Citation.]"

They rely on the declaration of Marcin Lambirth attorney Ashkinadze who stated that in January 2010 she conducted the deposition of architect John Dolinsky and at that time learned about the existence of a file for a remodel project on the Cass property. Thereafter, she undertook efforts to obtain the file, including subpoenaing Dolinsky. When he failed to produce anything in response to the subpoena, she contacted him by telephone and he told her that Carnegie told him he did not have to produce the file and Jensen instructed him not to produce the file. After receiving an ex parte notice of a motion to compel, Carnegie told Ashkinadze that he had never seen the file, but would instruct Dolinsky to provide it. Thereafter, in May 2010 Dolinsky made the file available at his office. The file contained documents generated in 2007 that related to a proposed second floor addition and garage relocation for the single family residence on the Cass property. In connection with that project, the file also contained a 2008 covenant and agreement regarding the approval of a parcel map that suggested one of the conditions Peachtree and Jensen alleged Charon and Segal failed to complete was now satisfied.[14]

---

[14] Although the trial court sustained Peachtree and Jensen's objections to the statements in Segal's declaration on this point, it overruled their objections to Ashkinadze's declaration and the exhibits attached to Segal's declaration that addressed the same issue.

We fail to see how this evidence undermines Peachtree and Jensen's advice of counsel defense. In order to rely on the defense, the malicious prosecution defendant must disclose to counsel all material facts within his or her knowledge. (*Warner v. O'Connor, supra,* 199 Cal.App.2d at p. 775; *Schubkegel v. Gordino* (1943) 56 Cal.App.2d 667, 673.) Viewed in a light most favorable to Charon and Segal, the evidence showed Jensen attempted to conceal that she had received approval of a condition she alleged Segal represented he would obtain. But Jensen satisfied the condition in 2008; Peachtree's cross-complaint alleged that Segal represented he would and had a duty to undertake to satisfy the requisite conditions for the lot split proposed in 1999 in connection with the formation of P&P. It alleged that Charon and Segal incurred liability on the basis of making misrepresentations, failing to fulfill their duties and breaching promises in connection with the lot split that was proposed before 2006 when Charon withdrew from P&P. The assertedly concealed facts about events that occurred in 2007 and 2008 were not material, nor did they serve to defeat Peachtree and Jensen's causes of action. (See *Palmer v. Zaklama, supra,* 109 Cal.App.4th at pp. 1383–1384.) At best, the file showed that Jensen undertook to satisfy a condition as part of a different project that was commenced after Charon had withdrawn from P&P. Because Charon and Segal have not shown a probability of success in overcoming Peachtree and Jensen's advice of counsel defense, the trial court properly granted the special motion to strike. (See, e.g., *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 ["There is perhaps no rule of review more firmly established than the principle that a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion"].)

## DISPOSITION

The orders granting in part Charon's and Segal's motion to strike, denying in part the Marcin Lambirth motion for attorney fees and granting Peachtree's and Jensen's motion to strike are affirmed.  All parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.